UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM PRIMO,

   Plaintiff,

v.            CASE NO. 3:13-cv-64-J-32MCR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

   Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's Application for Taxation of

Costs ("Plaintiff's Application to Tax Costs") (Doc. 128) and Defendant's Motion to

Tax Costs and Attorneys' Fees Pursuant to Section 768.79, Florida Statutes

("Defendant's Motion for Attorneys' Fees) (Doc. 131).  Defendant filed a response

in opposition to Plaintiff's Application to Tax Costs ("Defendant's Response")

(Doc. 130) and Plaintiff filed a response in opposition to Defendant's Motion for

Attorneys' Fees ("Plaintiff's Response") (Doc. 132).  Additionally, the parties filed

a Joint Stipulation narrowing the disputed issues before the Court.  (Doc. 134.)

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion] a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was not made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Upon reviewing the memoranda, exhibits and Joint Stipulation submitted by the parties, and for the reasons stated herein, the undersigned recommends that Plaintiff's Application to Tax Costs be **GRANTED in part and DENIED in part**, and that Defendant's Motion for Attorneys' Fees be **GRANTED in part and DENIED in part**.

## I.   Background

This case involves a motor vehicle accident and subsequent personal injuries sustained by Plaintiff.  (Doc. 2.)  Plaintiff sued Defendant alleging that Defendant refused to pay underinsured/uninsured claims to Plaintiff as a result of the motor vehicle accident in breach of the automobile insurance policy issued by Defendant to Plaintiff.  (*Id.*)  On January 16, 2013, the case was removed to this Court based on diversity jurisdiction.  (Doc. 1.)  Following a four-day trial, the jury rendered a verdict in favor of Plaintiff in the amount of $57,560.00  (Doc. 120.)  On December 1, 2014, the Court entered an Order setting off the total jury award in the amount of $41,338.20 for various collateral source and settlement payments made by other interested parties.  (Doc. 124 at 5-6.)  As such, the Court entered judgment in favor of Plaintiff in the amount of $16,221.80.  (Doc. 125.)

## II.   Discussion

Plaintiff now seeks $63,040.77 in taxable costs as the prevailing party in

this matter.[2]  In Defendant's Response, it argues that Plaintiff claims numerous expenses that are not taxable under 28 U.S.C. § 1920.  (Doc. 130 at 2.) Defendant argues that Plaintiff should be awarded no more than $9,383.48 in total taxable costs.  (*Id.* at 13.)

Defendant also seeks an award of $49,622.50 in attorneys' fees and $24,449.72 in costs stemming from a $40,000 proposal for settlement ("PFS") served upon Plaintiff on June 20, 2014, pursuant to Florida Statute Section 768.79.  In Plaintiff's Response, he contends that the PFS is invalid because it violates Florida Rule of Civil Procedure 1.442(c)(2)(B) in that it fails to "state that the proposal resolves all damages that would otherwise be awarded in the action in which the proposal is served . . ."  Fla. R. Civ. P. 1.442(c)(2)(B).  Plaintiff also argues that Defendant is not entitled to fees and costs because the "judgment obtained" by Plaintiff exceeds $30,000 (which is not less than 25% of the $40,000 PFS).  Alternatively, Plaintiff argues that federal law applies to taxing costs under the PFS, which prohibits Defendant from seeking certain costs.  Plaintiff also asserts that Defendant improperly seeks to tax certain other costs.  (Doc. 132.)

## A.    Whether the PFS is Valid

Florida's offer of judgment statute establishes a party's entitlement to

---

[2] Plaintiff initially filed a Proposed Bill of Costs on December 15, 2014 and re-filed his Proposed Bill of Costs on December 16, 2014.  (Docs. 126 and 127.)  Counsel was notified to re-file a redacted Proposed Bill of Costs to remove certain personal information. On December 17, 2014, Plaintiff filed the instant Application to Tax Costs.  (Docs. 128, 128-1, 128-2, and 128-3.)

attorneys' fees upon certain conditions related to the filing of an offer of judgment. On June 20, 2014, Defendant served its PFS on Plaintiff pursuant to § 768.79, Fla. Stat., proposing that Defendant pay $40,000 for full and final "settlement of all Plaintiff's claims pending against this Defendant, STATE FARM, in the [] lawsuit." (Doc. 131-1.)  Defendant conditioned the settlement on Plaintiff dismissing with prejudice the claims asserted by Plaintiff against Defendant. (*Id.*) The PFS amount of $40,000 included taxable costs and interest, but did not include attorneys' fees.[3] (*Id.*)

Defendant did not withdraw its PFS, and Plaintiff failed to accept it within the statutorily-permitted time period.  Therefore, Defendant contends that it is entitled to attorneys' fees and costs from June 20, 2014 forward because the amount of the judgment obtained by plaintiff - - $25,605.28, equal to the judgment rendered ($16,221.80) plus the taxable costs that Defendant believes Plaintiff is permitted to recover ($9,383.48) - - is at least 25% less than the $40,000 offered, or $30,000.

Prior to going into any analysis regarding fees and costs, the undersigned must first determine whether Defendant's PFS is valid and, if so, whether the judgment obtained by Plaintiff amounted to at least 25% less than the $40,000

---

[3] The PFS also noted that it does not include attorneys' fees because attorneys' fees were not a part of the claims asserted by Plaintiff.  The PFS further noted that it does not include anything for punitive damages because Plaintiff did not make a claim for such relief. (*Id.*)

PFS.  Plaintiff initially argues that Defendant's PFS is facially invalid because it fails to comply with Florida Rule 1.442(c)(2)(B), as amended in 2013, which now provides that a proposal for settlement shall "state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served, subject to [the provision in the rule governing attorneys' fees]."  Fla. R. Civ. P. 1.442(c)(2)(B).  Specifically, Plaintiff asserts that Florida law mandates strict compliance with the language requirements of Rule 1.442 and that any drafting deficiencies should be construed against the drafter of the proposal for settlement.  As such, Plaintiff argues that Defendant's PFS is invalid as ambiguous because the PFS states that the $40,000 offer is "in settlement of *all claims*," instead of stating that the $40,000 offer resolves "*all damages*."  (Doc. 131-1) (emphasis added).  The undersigned rejects Plaintiff's technical argument within the context and circumstances presented in this case.

As an initial matter, Florida federal courts apply Florida's offer of judgment statute to award attorneys' fees to a prevailing party.  *See Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008); *see also American Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, Case No.: 5:10-cv-329-Oc-10PRL, 2015 WL 846650 at *5-7 (M.D. Fla. Feb. 26, 2015); *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010); *De Varona v. Discount Auto Parts, LLC*, 935 F. Supp. 2d 1335, 1343 (S.D. Fla. 2013).  While Plaintiff is correct that Florida courts have required strict compliance with Rule

1.442 in certain contexts, *see, e.g., Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So.3d 362, 376-78 (Fla. 2013) (reversing award based on proposal for settlement because the offer did not specify whether attorneys' fees were included), the undersigned believes it is important to look at Rule 1.442's intent in order to gain a true understanding of what the rule actually requires.

Rule 1.442 "was implemented solely to encourage settlements in order to eliminate trials if possible." *Unicare Health Facilities, Inc. v. Mort*, 553 So.2d 159, 161 (Fla. 1989) (citations omitted).  "The clear intent of the underlying policy of the rule was to terminate *all claims*, end disputes, and obviate the need for further intervention of the judicial process." *Id.* (emphasis added).  Rule 1.442 "merely requires that the settlement proposal be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification." *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So.2d 1067, 1079 (Fla. 2006).

Prior to the 2013 Amendments to the rule, Rule 1.442(c)(2)(B) required that a proposal "identify the claim or claims the proposal is attempting to resolve." *See In re Amendments to Florida Rules of Civil Procedure*, 131 So.3d 643, 644 (Fla. 2013).  However, in 2013, the Florida Supreme Court adopted the Florida Bar's Civil Procedure Rules Committee's (the "Committee") proposed amendments to the rule.  *Id.*  In adopting the proposed amendments, the Florida Supreme Court noted that the "majority of the Committee determined that the amendment was needed to curtail *partial proposals for settlement* and to comport

6

with section 768.79(2), Florida Statutes (2012), which states, in pertinent part, that '[t]he offer [to settle] shall be construed as including all damages which could be awarded in a final judgment.'" *Id.* (emphasis added).

In light of this legal backdrop, the undersigned finds that Defendant's PFS attempting to resolve "all claims" against Plaintiff, as opposed to "all damages" against Plaintiff, is sufficiently clear and definite so as to have allowed Plaintiff to make an informed decision on whether to accept the offer without needing clarification.  Plaintiff takes exception with Defendant's failure to explicitly state that the PFS resolves "all damages."  Plaintiff asserts that this failure equates to careless drafting of the PFS and creates an ambiguity rendering the PFS unenforceable.  Notably, however, Plaintiff fails to explain how the offer to resolve "all claims" against him in this lawsuit differs from an offer to resolve "all damages" against him so as to require clarification before deciding whether to accept Defendant's PFS.  The undersigned cannot find a material difference between offering to resolve "all claims" in this lawsuit and offering to resolve "all damages" in this lawsuit, especially in light of the circumstances of this case - - a single plaintiff alleging recovery based on a single defendant's alleged breach of an automobile insurance policy.  The PFS is further made clear by the consideration sought in exchange for the offer to settle - - for Plaintiff "to dismiss with prejudice the claims . . . asserted against Defendant . . . in the Complaint filed in the above-styled lawsuit."  (Doc. 131-1.)

7

The Committee likewise appears to view no material difference between proposals attempting to resolve "all claims" and those attempting to resolve "all damages," as it used the words interchangeably in the Committee Notes to the rule.  In explaining the purpose behind the 2013 Amendment to Rule 1.442(c)(2)(B), the Committee stated that the rule "is amended to clarify that a proposal for settlement must resolve *all claims* between the proponent and the party to whom the proposal is made except claims for attorneys' fees, which may or may not be resolved in the proposal."  Fla. R. Civ. P. 1.442(c)(2)(B) (Committee Notes) (emphasis added).  Moreover, at least one other Florida federal court used the phrases interchangeably when ruling in an analogous situation.  *See, e.g., Kowalski v. Jackson Nat. Life Ins. Co.*, Case No.: 12060597-CIV, 2014 WL 4101567 at *4 (S.D. Fla. Aug. 20, 2014) (analyzing the validity of a proposal for settlement after the 2013 Amendment to Rule 1.442(c)(2)(B) and finding that "the offer unambiguously applies to '*all claims* between [Defendant] and Plaintiff'") (emphasis added) (quotations omitted).

Here, Defendant's PFS was not a partial proposal and clearly attempted to resolve all claims pending between Plaintiff and Defendant in the lawsuit.  As such, the undersigned finds Defendant served a valid PFS upon Plaintiff.[4]

---

[4] Plaintiff did not argue that the offer was made in bad faith.  *See, e.g., Pickett v. R.J. Reynolds Tobacco Co.*, 948 F. Supp. 2d 1314, 1317 (M.D. Fla. 2013) ("The burden is upon the offeree to prove that the offeror acted without good faith.") (citation and internal quotation marks omitted).

## B.     Analyzing the "Judgment Obtained" and Prevailing Party Costs

When determining whether to award Defendant attorneys' fees and costs, the Court must look at the "judgment obtained" by Plaintiff and compare it with the amount of Defendant's PFS to determine whether the "judgment obtained" amounts to at least 25% less than the $40,000 offered, or $30,000.  *See White v. Steak & Ale of Fla.*, 816 So.2d 546, 551 (Fla. 2002); Fla. Stat. § 768.79(1).  The "judgment obtained" pursuant to Florida Statute Section 768.79 "includes the net judgment for damages and any attorneys' fees and taxable costs that could have been included in a final judgment if such final judgment was entered on the date of the offer."  *White*, 816 So.2d at 551.  Here, the Court rendered judgment for damages in favor of Plaintiff in the amount of $16,221.80.  (Doc. 125.)  The Court must also calculate Plaintiff's taxable costs that could have been included in a final judgment if such final judgment was entered on June 20, 2014, the date of the PFS.[5]

The parties agree that costs incurred by Plaintiff after June 20, 2014, the date of Defendant's PFS, are not taxable to determine the "judgment obtained" by Plaintiff.  (Doc. 134 at 1.)  Because this case is in federal court based on diversity jurisdiction, the taxation of costs by a federal court is controlled by federal rather than state law.  *See, e.g., North v. Mayo Grp. Dev., L.L.C.*, Case No.: 3:11-cv-

---

[5] Plaintiff did not seek an award for attorneys' fees and, thus, has conceded the issue.  (*See* Doc. 131-1 at 2; *see also generally*, Docs. 69 and 134.)

444-J-32JBT, 2013 WL 3461932 at *1 (M.D. Fla. July 9, 2013) ("Even in diversity cases, the taxation of costs by a federal court is controlled by federal rather than state law.") (citations omitted); *Kearney v. Auto-Owners Ins. Co.*, Case No.: 8:06-cv-595-T-24TGW, 2010 WL 3062420 at *2 (M.D. Fla. Aug. 4, 2010) (holding that federal law governs which costs are taxable under Florida's offer of judgment statute).

The Parties stipulate that the following costs are taxable to determine the "judgment obtained" by Plaintiff: (a) $7,702.60 for printed or electronically recorded transcripts; (b) $740.48 for printing; (c) $410.00 for fees of the Clerk and Marshal; (d) $255.00 for service of summons and subpoenas; and, (e) $235.40 for exemplification and the costs of making copies.[6] (Doc. 134.)  As such, the parties' stipulated taxable costs to determine the "judgment obtained" by Plaintiff is $9,343.48.  The undersigned accepts the stipulation of the parties, including the reasonableness of costs in the amount of $9,343.48.  The stipulated taxable costs when added to the final judgment totals $25,565.28.  Because this amount is less than $30,000, the Court must determine whether the Court will allow an award of any disputed costs in favor of Plaintiff thereby rendering the "judgment obtained" by Plaintiff greater than $30,000.00

Two categories of costs remain in dispute.  Plaintiff argues that he is

---

[6] The parties also agree the amount of taxable costs is $0.00 for "Lawyer conference/deposition/meeting" with Rahul Deshmukh, M.D., incurred after June 20, 2014, and for "editing of expert depositions and DVD production."

entitled to $46,135.00 in expert witness fees for deposition and live trial testimony.  Defendant contends that the taxable amount for expert witness fees is limited to $40.00.  Further, the parties dispute whether Plaintiff is entitled to $3,300.00 in "other costs," which represent "deposition fees" of two defense experts.

It appears that $8,300.00 out of the $46,135.00 sought in expert witness fees should be excluded from the total calculation because those costs were incurred after June 20, 2014.[7]  (Docs. 114, 128-1 at 5 and 128-3 at 30.)  As such, the Court must determine whether any of the remaining $37,835.00 can be properly taxed as "expert witness fees."

Congress has established the fees payable to a witness, and the extent to which those fees are included in taxable costs.  *See* 28 U.S.C. § 1821(b); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).  When a party seeks reimbursement for fees paid to its own expert witnesses, as opposed to those appointed by the court, "a federal court is bound by the limit of 28 U.S.C. § 1821, absent contract or explicit statutory authority to the contrary."  *Crawford*, 482 U.S. at 442; *see also Morrison v. Reichhold Chemicals, Inc.*, 97

---

[7] This amount includes Dr. Kornick's $3,100.00 charge for live trial testimony and Teofilo Sims, PT's $700.00 charge for live trial testimony, which occurred on September 10, 2014.  This amount also includes the parties' stipulated exclusion of Dr. Rahul Deshmukh's charges of $4,500.00 for "Lawyer conference/deposition/meeting," which occurred on July 25, 2014.  Even assuming these fees were incurred prior to service of the PFS, it does not appear Plaintiff provided sufficient documentation supporting the charges incurred.

F.3d 460, 463 (11th Cir. 1996) (holding that district court erred in taxing as costs any amount for expert witness fees in excess of the $40.00 per day allowed under 28 U.S.C. § 1821.  Therefore, "[u]nless an expert is court-appointed, [] expert witness fees cannot be taxed in excess of the $40–per–day limit set out in § 1821(b), in addition to travel expenses."  *North*, 2013 WL 3461932 at *3 (citations omitted).

Here, Plaintiff does not argue that any expert witness in this matter was court appointed and a review of the docket does not reveal a court-appointed expert witness.  Moreover, Plaintiff does not reference any contract or explicit statutory authority allowing taxable witness costs in addition to those set forth in 28 U.S.C. § 1821.  Plaintiff merely asserts that he "seeks fees in the amount of $46,135.00 for the attendance of witnesses and experts that have appeared in this case . . . includ[ing] those reasonably incurred that are related to the expert's testimony," and cites 28 U.S.C. § 1920 as a basis. (Doc. 128-1 at 5.)  Because Plaintiff does not seek expert witness fees for court appointed experts and because there does not appear to be any contractual or explicit statutory authority authorizing the Court to award additional expert witness fees, the undersigned determines that Plaintiff is limited to taxable expert costs within the parameters of 28 U.S.C. § 1821.  *Morrison*, 97 F.3d at 463; *North*, 2013 WL 3461932 at *3; *see also D.B. v. Orange Cnty., Fla.*, Case No.: 6:13-cv-434-Orl-31DAB, 2015 WL 847293 at *5 (M.D. Fla. Feb. 26, 2015) ("Further, the breakdown listed on the Bill

12

[of Costs] appears to include expert witness fees, in addition to the allowable attendance, subsistence and mileage reimbursement/common carrier expense. Such expert fees are not included in [28 U.S.C. §] 1920 and must be disallowed.").

Plaintiff, as the prevailing party, bears the burden of submitting a request for expenses that enables the Court to determine what expenses were incurred by him and his entitlement to an award of those expenses. *See, e.g., Hodges v. School Bd. of Orange Cnty., Fla.*, Case No.: 6:11-cv-135-Orl-36GJK, 2014 WL 6455436 at *14 (M.D. Fla. Nov. 13, 2014) (citing *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994)). Failure to provide sufficient detail or supporting documentation verifying the expenses incurred can be grounds for denial of certain expenses. *See, e.g., Pelc v. Nowak*, Case No.: 8:11-cv-79-T-17TGW, 2013 WL 3771233 at *5 (M.D. Fla. July 17, 2013). Here, Plaintiff provides no indication that he seeks an award of costs for expert witness travel expenses. (*See, e.g.,* Doc. 128 at 2.) Therefore, Plaintiff is limited to recovering the $40.00 per day expert witness attendance fee for each witness for which he provided proper supporting documentation verifying such fee. Upon review of the documentation submitted by Plaintiff, the undersigned finds sufficient support for a $40.00 deposition attendance fee for a video deposition of Dr. Robert Hurford

(Doc. 128-3 at 27)[8] and a $40.00 deposition attendance fee for "overtime on [a] continu[ed] phone deposition" of Dr. Michael Freeman (*Id.* at 41.)  Thus, the undersigned finds $80.00 as a reasonable and necessary fee for Plaintiff's expert witnesses.[9]

The same analysis applies to Plaintiff's request for "other costs" in the form of Defendant's expert witness fees.  *See, e.g., Morrison*, 97 F.3d at 462-63 (reversing district court award of losing party's total expert witness fees and holding that losing party's expert witness fees are limited to the fees set by 28 U.S.C. § 1821 in the same way the prevailing party's expert witness fees are limited).  Therefore, the undersigned finds Plaintiff is entitled to a $40.00 attendance fee for the deposition of Dr. H. Lynn Norman (Doc. 128-3 at 48)[10] and a $40.00 attendance fee for the deposition of Dr. Michael Foley, totaling $80.00 for Defendant's expert fees.

Based on the foregoing, the undersigned finds that the "judgment obtained" by Plaintiff totals $25,725.28 (Judgment rendered in the amount of $16,221.80,

---

[8] Defendant does not object to this $40.00 as a taxable cost.  It appears that Dr. Hurford's deposition was also taken by Defendant on January 23, 2014.  (Doc. 128-3 at 23.)  However, as Defendant represents, it appears that the invoice was sent to and paid by Defendant.  (*Id.*)

[9] The undersigned finds that Plaintiff failed to provide documentation sufficient to show that a $40.00 witness fee should be taxed for the deposition of Gil Spruance or any pre-June 20 deposition of Dr. Rahul Deshmukh.

[10] The Parties stipulate that the $320.00 fee for editing of expert depositions on September 10, 2014 (Doc. 128-3 at 47) is excluded because it occurred after June 20, 2014.  (Doc. 134 at 3-4.)

plus the total stipulated costs of $9,343.48, plus the expert witness attendance

fee allowance pursuant to 28 U.S.C. §1821(b) of $160.00).  As such, the

undersigned finds that the "judgment obtained" by Plaintiff ($25,725.28) amounts

to at least 25% less than the $40,000 offered in the PFS, or $30,000.00.

Accordingly, the undersigned finds Defendant is entitled to attorneys' fees and

reasonable costs incurred after June 20, 2014, pursuant to Florida Statute §

768.79.

Similarly, the undersigned finds that Plaintiff is entitled to an award of

$9,503.48 ($9,343.48 of total stipulated costs plus the expert witness attendance

fee allowance of $160.00) as reasonable costs incurred as the prevailing party up

to the date of service of Defendant's PFS.  *See, e.g., North v. Mayo Group*

*Development, L.L.C.*, Case No.: 3:11-cv-444-J-32JBT, 2013 WL 3461912 at *1

(M.D. Fla. July 9, 2013) (awarding Plaintiff taxable costs incurred as the

prevailing party under federal law up to the date the offer of judgment was

served).

## C.    Defendant's Attorneys' Fees

The parties stipulate that if the Court grants Defendant's Motion for

Attorneys' Fees, then Defendant would be entitled to $40,737.00 of the

$49,622.50 claimed in attorneys' fees.  (Doc. 134 at 5.)  The undersigned accepts

the parties' stipulation as to the reasonableness of the attorneys' fees for the

amount set forth in the Joint Stipulation.[11]  *Cf., Scelta v. Delicatessen Support Services, Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (holding that "all hours as to which the plaintiff and her attorney have not made an objection will be accepted"); *Access For Disabled, Inc. v. FFH, Inc.*, Case No.: 06-80899-CIV, 2010 WL 1713247 at *4-5 (S.D. Fla. Apr. 7, 2010) report and recommendation adopted sub nom. *Access for the Disabled, Inc. v. FFH, Inc.*, Case No: 06-80899-CIV, 2010 WL 1713242 (S.D. Fla. Apr. 28, 2010) (compensating plaintiffs for all hours billed where defendant did not specifically object to any of counsel's other billing entries).   Plaintiff disputes the remaining $8,885.50 in attorneys' fees charged by Defendant.

First, Plaintiff contends that Defendant is not entitled to recover $6,643.50 in attorneys' fees for "work related to post-trial motions for set-off issues and for attorneys' fees and costs work."[12]  (Doc. 134 at 7.)  It is clear in the context of determining attorneys' fees pursuant to Florida's offer of judgment statute that "while attorney's fees incurred for litigating the issue of *entitlement* to attorney's fees are recoverable, fees incurred for litigating the *amount* of attorney's fees are not." *McMahan v. Toto*, 311 F.3d 1077, 1085 (11th Cir. 2002) (citing *State Farm*

---

[11] Based on acceptance of the Joint Stipulation, the undersigned also finds it unnecessary to inquire into the reasonableness of the hourly rate charged by Defendant's counsel.

[12] The disputed amount of $6,643.50 comes from the total amount of Defendant's December 31, 2014 invoice submitted as support for the disputed amount.  (Doc. 131-4 at 19-24.)

*Fire & Cas. Co. v. Palma*, 629 So.2d 830, 833 (Fla. 1993)) (emphasis added); *see also New York Life Ins. Co. v. Waxenberg*, Case No.: 8:07-cv-401-T-27TGW, 2009 WL 5214986 at *3 (M.D. Fla. Dec. 29, 2009) ("As an initial matter, the fees incurred in litigating the amount of fees to which the [defendant] is entitled are not recoverable.").

Upon a detailed review of the December 31, 2014 invoice (Doc. 131-4 at 19-24) submitted in support of Defendant's Motion for Attorneys' Fees, the undersigned finds that Defendant is entitled to recover for the amount of attorneys' fees for legal work set forth in the entries from October 6, 2014 through December 10, 2014, because those entries represent reasonable fees rendered by Defendant in litigating its entitlement to fees.  Specifically, the October 6 through December 10 entries are for legal work related to either collateral source issues (for litigating the "judgment obtained" by Plaintiff) or for issues regarding the applicability of Florida's offer of judgment statute in federal diversity cases. The October 6 through December 10 entries total $1,752.00.

However, the undersigned finds that the remainder of entries in Defendant's December 31, 2014 invoice ($4,891.50) to be related to fees incurred for litigating the amount of attorneys' fees.  Therefore, the undersigned recommends denying Defendant's request for an award for the remainder of the December 31, 2014 invoice in the amount of $4,891.50.

Finally, Plaintiff disputes various other charges as either unreasonable or

17

unnecessary.  The undersigned finds that the September 2, 2014 $87.00 charge

for "prepar[ing] Dr. Norman for trial," (Doc. 131-4 at 13) and the September 6,

2014 $145.00 charge for "plan[ning] and prepar[ing] for cross-exam of Gil

Spruance," (Doc. 131-4 at 14) to be unnecessary because it does not appear that

either of the individuals testified at trial.  The undersigned agrees with Plaintiff

that the September 3 ($150.00 charge by PJM), September 7 ($490.00 charge by

PJM),[13] September 8 ($770.00 collective charge by PJM and DAH), and

September 11 ($600.00 charge by PJM) entries (Doc. 131-4 at 13, 15, and 16,

respectively) to be unreasonable as non-paralegal-type clerical work.  *See, e.g.,*

*Gray v. Novell, Inc.*, Case No.: 8:06-cv-1950-T-33TGW, 2012 WL 3871872 at *8

(M.D. Fla. Sept. 6, 2012) ("Work by paralegals is recoverable 'only to the extent

that the paralegal performs work traditionally done by an attorney.'  Costs

associated with clerical tasks are overhead expenses which are not compensable

in the attorney's fees award.") (citations and quotations omitted).  Therefore, the

undersigned recommends excluding this amount totaling $2,242.00 from the

calculation of attorneys' fees awarded to Defendant.

    In sum, the undersigned recommends that Defendant be awarded a total

_____

[13] Although the charge for PJM on September 7 appears to be $390.00 not $490.00,
the undersigned believes the $100 difference should be taxed against Defendant as the
party who holds the burden of proving entitlement to fees.  (*Compare* Doc. 134 at 6 with
Doc. 131-4 at 15); *see also, Gray*, 2012 WL 3871872 at *7 (acknowledging that counsel
seeking fees must set out expenditures with sufficient particularity so the district court can
assess the time claimed for each activity).

amount of $42,489.00 in attorneys' fees (the stipulated amount of $40,737.00 plus $1,752.00 in legal work related to the issue of entitlement of fees).  The undersigned recommends excluding the remaining $7,133.50 sought by Defendant as unreasonable and/or unnecessary.

### D.    Defendant's Costs

Defendant seeks an award of $24,449.72 as reasonable costs.  Of that amount, the parties stipulate that $770.50 ($137.50 for deposition transcript of Jairon Willis and $633.00 out of the total cost of $1,169.52 for deposition transcript fees for Dr. Michael Foley) can be properly taxed by the Court.  The undersigned accepts the parties' stipulation as to $770.50.  The parties dispute whether Defendant can recover the remaining $23,679.22.  Of that remainder, Defendant believes he can tax $21,600.00 in expert witness fees.  Defendant argues in support that the Court should apply Florida's Statewide Uniform Guidelines for Taxation of Costs in Civil Actions, instead of 18 U.S.C. § 1920, to determine Defendant's taxable costs under Florida's offer of judgment statute.

### i.    Standard

Courts within this District have held that the recovery of costs under Florida's offer of judgment statute is governed by federal law, and have specifically rejected Defendant's argument that the Court should apply Florida's Statewide Uniform Guidelines for Taxation of Costs in Civil Actions to determine costs recoverable by Defendant.  *See, e.g., Jalosinski v. Dorel Juvenile Group,*

19

*Inc.*, Case No.: 2:13-cv-371-FtM-29DNF, 2015 WL 4395406 at *5 (M.D. Fla. July 16, 2015) ("While the recovery of attorney's fees under the offer-of-judgment statute presents a substantive matter for state law, the recovery of costs under that statute does not similarly raise a substantive issue.  The offer-of-judgment statute leaves unchanged the 'traditional rule' that the recovery of costs presents a procedural matter for federal law.") (internal citations omitted); *North*, 2013 WL 3461932 at *1-4 (applying federal law to determine costs award to Defendants pursuant to Florida's offer of judgment statute); *Kearney*, 2010 WL 3062420 at *2 (holding that Florida's offer of judgment statute does not explicitly authorize costs in addition to those provided under federal law and rejecting argument that statute's mention to apply Florida's Statewide Uniform Guidelines for Taxation of Costs in Civil Actions is explicit enough to supersede the traditional rule that federal law governs costs).

### ii.    Expert Witness Fees

In light of the foregoing, the undersigned finds that Defendant is not entitled to expert witness fees above the statutory rate set forth in 28 U.S.C. § 1821(b). Here, Defendant has not shown that it incurred any witness travel expenses. Therefore, Defendant is limited to recovering the $40.00 per day witness attendance allowance for Dr. Chaim Rogozinski's appearance at trial on September 11, 2014 (Doc. 115, 131-2 at 14) and Dr. Michael Foley for his appearance at a deposition on August 29, 2014 (Doc. 131-2 at 3), for a total of

$80.00.  However, the undersigned finds that an expert witness trial attendance fee for Dr. Norman to be unwarranted as Dr. Norman did not appear at trial.  *See, e.g., Miledy Strait v. Busch Entertainment Corp.*, Case No.: 8:05-cv-1864-T-24MAP, 2007 WL 496606 at *2 (M.D. Fla. Feb. 12, 2007) (reducing costs for witnesses that did not testify at trial).[14]

### iii.    Deposition Transcript Expenses

Further, the parties dispute whether the remaining cost of $536.52 for the deposition transcript of Dr. Foley can be properly taxed by Defendant.  Although certain costs for deposition transcripts are recoverable under 28 U.S.C. § 1920(2), costs incurred merely for counsel's convenience are not recoverable.  *See, e.g., North*, 2013 WL 3461932 at *3.  For example, "multiple copies of a deposition transcript, courier fees regarding the acquisition of a deposition and other ancillary costs related to deposition transcripts are generally *not* recoverable."  *Barrera v. Weiss & Woolrich Southern*, 900 F. Supp. 2d 1328, 1335 (S.D. Fla. 2012) (emphasis in original).  The disputed costs consist of $515.52 for "Overnight Expedited Transcript," $10.00 for "Processing/Archival/Delivery," and $11.00 for "Michael Foley, M.D. Exhibit." (Doc. 131-2 at 10.)  The undersigned finds that these costs are ancillary costs related to the deposition transcript that are not recoverable under 28 U.S.C. §

---

[14] It appears that the Court instructed Defendant to choose between Dr. Norman and Dr. Rogozinski as its testifying doctor.  (Doc. 132 at 6.)  As such, Dr. Norman was not even available to testify at trial.

1920(2).

### iv.    Trial Exhibit Expenses

Defendant seeks $1,412.70 in costs for duplication of records to be used as trial exhibits in this matter.[15]  Of this amount, Defendant seeks to tax $200.00 worth of 3-ring binders and $52.00 in preprinted tabs.  Defendant has not proven its entitlement to these costs.  As such, the undersigned finds these costs should be excluded.  *See, e.g., Durden v. Citicorp Trust Bank, FSB*, Case No.: 3:07-cv-974-J-34JRK, 2010 WL 2105921 at *4 (M.D. Fla. Apr. 26, 2010) (excluding costs for binder costs, labeling costs, and costs for bates numbering documents and finding the costs non-taxable as extraneous costs).

Plaintiff also objects to the remaining costs for 8,925 copies of "Blowbacks" and 165 copies of "Color Blowbacks" because the expense records are insufficiently detailed and because the rate of $.79 per page for 165 pages of "Color Blowbacks" is excessive.  The undersigned finds that Defendant has provided sufficient detail as to the nature and purpose of the copying for which it seeks costs.  *See, e.g., Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F. App'x 1293, 1296 (11th Cir. 2001) (affirming taxation of costs in the amount of $3,173.42 for copying paper trial exhibits); *Durden*, 2010 WL 2105921 at *4

---

[15]  This amount equals $937.13, consisting of 8,925 copies of "Blowbacks" at $.105 per page, $130.35, consisting of 165 copies of "Color Blowbacks" at $.79 per page, $200.00, consisting of five (5) 3-ring binders at $40.00 per binder, $52.80, consisting of 176 preprinted tabs at $.30 per tab, and $92.42 in sales tax at 7% of the subtotal.

22

(finding that copying of documents for discovery production and trial exhibits necessary for use in the case).  For purposes of seeking costs for copying and exemplification fees Defendant was "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs.  Rather, [Defendant] was required to provide the best breakdown obtainable from retained records." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991) (citation omitted).  The undersigned finds that Defendant did so here.  However, the undersigned finds the photocopying costs (especially the costs at \$.79 per page) to be excessive and limits the cost recoverable to \$.10 per page.  *See, e.g., James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 652 (S.D. Fla. 2007) (limiting taxable copying costs to \$.10 per page).  Therefore, the undersigned finds \$972.63 of the \$1,412.70 to be taxable (909 copies at \$.10 per page, plus \$63.63, representing 7% sales tax of the subtotal).

### v.   Subpoena Expenses

Finally, Plaintiff objects to the \$75.00 rush fee charged for service of the subpoena upon witness Carol Fudge and the \$55.00 rush fee charged for service of the subpoena upon Dr. Rogozinski.  Plaintiff objects to these expenses as non-compensable as they are charged above the normal subpoena rate.  Plaintiff also argues that Defendant failed to indicate the normal subpoena expense so the Court should exclude an award for costs with respect to issuing the subpoenas.

23

While private process server fees may be taxed pursuant to 28 U.S.C. §§ 1920(1) and 1921, those fees should not exceed the statutory fees authorized in § 1921. *See, e.g., U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000); *D.B.*, 2015 WL 847293 at *2 ("[T]his circuit allows recovery of fees charged by a private process server [] as long as the fees do not exceed that charged by the Marshal."). For personal service of process, the U.S. Marshal generally charges $65.00. *See* 28 C.F.R. § 0.114(a)(3). Therefore, the undersigned finds the $55.00 rush fee reasonable, but finds that the $75.00 rush fee should be reduced to $65.00, for a total of $120.00 in subpoena expenses.

## III.   Conclusion

Based on the foregoing, the undersigned recommends that Plaintiff's Application to Tax Costs be granted in part to the extent that he should be awarded $9,503.48 ($9,343.48 of total stipulated costs plus the expert witness attendance fee allowance of $160.00) in reasonable costs as the prevailing party up to the service date of Defendant's PFS. Because the undersigned finds that Defendant's PFS is valid and because the undersigned finds that the judgment obtained by Plaintiff of $25,725.28 is at least 25% less than Defendant's $40,000.00 offer, the undersigned finds that Defendant is entitled to reasonable attorneys' fees and costs after the service date of the PFS. Therefore, the undersigned recommends that Defendant's Motion for Attorneys' Fees be granted in part to the extent that Defendant should be awarded a total amount of

24

$42,489.00 in attorneys' fees (the stipulated amount of $40,737.00, plus $1,752.00 in legal work related to the issue of entitlement of fees) and a total amount of $1,943.13 in reasonable costs (the stipulated amount of $770.50, plus the expert witness attendance fees in the amount of $80.00, plus the $972.63 in exemplification costs, plus the $120.00 in private process server fees).

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The Plaintiff's Application to Tax Costs (**Doc. 128**) be **GRANTED** only to the extent that Plaintiff be awarded reasonable costs as the prevailing party up to June 20, 2014 (the service date of Defendant's PFS) in the total amount of $9,503.48, and be **DENIED** in all other respects.

2.     Defendant's Motion for Attorneys' Fees (**Doc. 131**) be **GRANTED** to the extent that Defendant be awarded $42,489.00 in attorneys' fees and $1,943.13 in reasonable costs pursuant to Florida Statute § 768.79, and be **DENIED** in all other respects.

3.     The Clerk of Court be **DIRECTED** to enter judgment for costs in the amount of $9,503.48, in favor of Plaintiff, and against Defendant; the Clerk of Court be further **DIRECTED** to enter judgment for fees and costs in the amount of $44,432.13, in favor of Defendant, and against Plaintiff**.**

**DONE AND ENTERED** at Jacksonville, Florida, on August 10, 2015.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record